UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DWIGHT WHETSTONE,

        Plaintiff,

   v.

R.S. ELLERS, et al.,

        Defendants.

Case No. 3:08-CV-2306

(Judge Kosik)

## MEMORANDUM

Plaintiff, Dwight Whetstone ("Whetstone"), an inmate confined at the State Correctional Institution at Dallas ("SCI-Dallas"), filed on December 24, 2008, a complaint pursuant to 42 U.S.C. § 1983, in which he alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[1] (Doc. 1.) Whetstone has also filed two Motions to Appoint Counsel. (Docs. 14 & 25.) Defendants Stanley Stanish and Stanley Bohinski filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 11, 2009 (Doc. 14) and a supporting brief on February 27, 2009 (Doc. 21). Defendants R.S. Ellers, Patricia Ginocchetti, Evelyn Smith, James Wynder, and Edgar Kneiss filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and supporting brief on March 20, 2009 (Docs. 31 & 32). Whetstone filed briefs opposing the Motions to Dismiss on March 18, 2009 (Doc. 30) and April 15, 2009 (Doc. 35).

---

[1] Plaintiff filed a Motion for Leave to File Amended Complaint on March 5, 2009 (Doc. 24), which we granted on March 12, 2009 (Doc. 29), however Plaintiff has failed to file an amended complaint.

1

The Motions to Appoint Counsel and the Motions to Dismiss are presently before us and are ripe for adjudication. For the reasons that follow, Whetstone's Motions to Appoint Counsel will be denied and Defendants' Motions to Dismiss will be granted in part and denied in part.

## FACTUAL BACKGROUND

We summarize the factual allegations of Whetstone's Complaint as follows.

On Sunday, December 31, 2006, Whetstone suffered an injury while bench pressing weights at SCI-Dallas. Whetstone "felt the grinding and rolling of muscles in his chest and upper arm area." Whetstone approached the lieutenant present in the recreational gymnasium and received permission to go to the infirmary. At the infirmary, Defendant Evelyn Smith ("Nurse Smith"), a registered nurse, questioned him and gave him "ice with iodine, took his blood pressure, [and] told [him] to sign up for sick call for January 2, because this was not an emergency." Whetstone continued to be in pain and requested that more measures be taken to treat him, however Nurse Smith told him to return to his cell or to go to the hole (RHU). Nurse Smith called Defendant Dr. Bohinski ("Dr. Bohinski"), who prescribed a pill to reduce the high blood pressure and ordered Whetstone to be observed overnight.

On January 1, 2007, Whetstone went to the SCI-Dallas infirmary, where Dr. Bohinski examined him. At the time, Dr. Bohinski was the facility medical director and was responsible for providing care to the inmates. During the examination, Whetstone explained what happened on December 31 and removed his sweatshirt with assistance to show Dr. Bohinski the severe swelling in his left upper arm and left pectoral. Dr. Bohinski stated that he would order an x-ray, however Whetstone disagreed with the effectiveness of an x-ray, because according to Whetstone, an x-ray would not show musculature damage whereas an MRI would. Whetstone did not get a brace or restraint to help him with his injury; Whetstone states that such a brace

2

should have been given to him and is generally available to inmates. Later on that day, Whetstone returned to the infirmary due to extreme pain and requested sleeping pills from the physician's assistant. He only received ice for his injury.

On January 2, 2007, Whetstone again went to the infirmary for sick call. Defendant Dr. Stanish ("Dr. Stanish"), who is the regional medical director for Prison Health Services, Inc., a private corporation, examined Whetstone and stated that "he sustained major damage [and] gave him several dosages of non-aspirin." According to Whetstone, Dr. Stanish observed the visibly amassed swelling and blood in his chest and upper left arm. Dr. Stanish had Whetstone return to his unit.

On January 3, 2007, Whetstone again went to the infirmary, after his shop supervisor told him to go there due to Whetstone's complaints of extreme numbness. At the infirmary, someone told Whetstone to sign up for sick call.

On January 9, 2007, prison officials transported Whetstone to an orthopedic consultation. The consultant told Whetstone that he was in great need of corrective surgery to the damage and that an MRI would determine the extent of the damage. On January 14, 2007, Whetstone was x-rayed at SCI-Dallas. On January 26, 2007, Whetstone had the MRI and was diagnosed by phone call on January 30, 2007 with "pectoralis major ruptured (separated) from supraspiratus [s.i.c.] tendon, muscle rolled into plaintiff's chest."

On February 6, 2007, Whetstone went to sick call to ask for a progress report regarding the scheduling of his surgery. He was told to be patient and received acetaminophen (non-aspirin) pills. Whetstone complained about lack of sleep, but did not receive sleeping pills. On February 16, 2007, Whetstone went to sick call to complain of excruciating pain. He again received acetaminophen.

On March 9, 2007, correctional officers transported Whetstone to see Dr. Keith Girton at St. Catherine's Medical Center in Ashland, Pennsylvania for a consultation. Dr. Girton informed Whetstone that he would perform the surgery. Whetstone inquired about a brace or other device to aid his injury, but Dr. Girton told him that SCI-Dallas would have to work out the device since it does not allow certain braces that contain metal.

On March 20, 2007, Whetstone went to sick call to complain of pain. He received acetaminophen. On March 28, 2007, Whetstone went to sick call to complain of pain. He requested that photographs be taken of his chest. Someone told him to request such photography from Dr. Bohinski. According to Whetstone, Dr. Bohinski failed to respond to his request.

On April 5, 2007, Whetstone was transferred to the State Correctional Institution at Mahanoy ("SCI-Mahonoy") due to his planned surgery. According to Whetstone, the medical staff at SCI-Mahonoy provided appropriate medical care and were very helpful. On April 11, 2007, Dr. Girton performed surgery on Whetstone at St. Catherine's Medical Center. After the surgery, he returned to SCI-Mahonoy later that day. On April 18, 2007, Whetstone returned to SCI-Dallas.

On May 21, 2007, Whetstone went to sick call to complain about "lumpage" in his chest. Dr. Stanish examined Whetstone's chest and determined that the surgery had failed. Both Dr. Stanish and the physician's assistant agreed with this conclusion.

On May 28, 2007, Whetstone went to sick call to ask for a brace to help him immobilize movement in his chest and upper arm. He also requested to see Dr. Girton again. Someone told Whetstone that an appointment with Dr. Girton was scheduled, but he was not given a date for the appointment. On May 29, 2007, someone called Whetstone to sick call to have another chest exam.

On June 1, 2007, someone called Whetstone to sick call to inform him that Dr. Girton had been contacted regarding Whetstone's concern about his surgery. On July 9, 2007, Whetstone went to sick call where he was notified that Dr. Girton would have a teleconference with him about his post-surgery concerns. On August 19, 2007, Whetstone went to sick call to ask when the teleconference with Dr. Girton would occur. He was told to submit a request slip to Dr. Bohinski.

On September 11, 2007, Whetstone went to sick call to complain about pain.

On September 20, 2007, Whetstone had a video conference with Dr. Girton, who stated that Whetstone needed a second surgery. Dr. Girton also stated that he would need approval from SCI-Dallas to perform the second surgery.

On October 9, 2007, Whetstone inquired about the status of his second surgery and also complained about pain and requested a bottom bunk and single cell. Dr. Bohinski refused to give Whetstone a single cell but spoke to Whetstone about his pain and a time frame for the second surgery. On October 12, 2007, Dr. Bohinski told Whetstone that an unknown committee denied Whetstone's second surgery.

On October 17, 2007, Whetstone began alternative treatment of physical therapy in the infirmary. He alleges that he lacked the ability to do the bare minimum physical therapy, and filed Grievance No. 204404 the next day regarding the denial of his second surgery.

According to prison officials, SCI-Dallas continues to provide care to Whetstone through the recommendations of off-site specialists and that his treatment plan is on-going. Additionally, they have stated in response to the grievance that the second surgery that was recommended by Dr. Girton was denied due to the significant risk of failure. The second surgery was supplanted by physical therapy. The Secretary's Office of Inmate Grievances and Appeals—the final level

5

of review for the grievance—denied the grievance appeal because it was determined that the medical care given to Whetstone was reasonable and appropriate.

## DISCUSSION

Defendants Ellers, Wynder, Kneiss, Ginocchetti, and Smith argue that (1) Whetstone has failed to state a claim of deliberate indifference to serious medical need under the Eighth Amendment, (2) Whetstone's claims for money damages against Defendants in their official capacities should be dismissed, and (3) Whetstone has failed to state a claim of life imprisonment discrimination under the Equal Protection Clause.

Defendants Bohinski and Stanish argue that Whetstone has failed to state a claim of deliberate indifference to a serious medical need under the Eighth Amendment.

We will now discuss each of the motions presented to us.

### I. Motions to Appoint Counsel

Prisoners have no constitutional or statutory right to counsel in civil cases, see Parham v. Johnson, 126 F.3d 454, 456–57 (3d Cir. 1997), however district courts have broad discretionary power to appoint counsel under 28 U.S.C. § 1915, see Montgomery v. Pichak, 294 F.3d 492, 499 (3d Cir. 2002). According to the Court of Appeals for the Third Circuit, counsel should be appointed for an indigent litigant when circumstances "indicate the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984). In making the decision to appoint counsel, a district court should consider the merits of the plaintiff's case, the plaintiff's ability to present his own case, the difficulty of the legal issues, the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue the investigation, the plaintiff's

6

capacity to retain counsel on his own behalf, the extent to which a case is likely to turn on credibility determinations, and whether the case will require testimony from expert witnesses. See Montgomery, 294 F.3d at 499.

Whetstone has demonstrated in the drafting of his Complaint, motions for counsel, and responses to the Motions to Dismiss that he is capable of litigating this case on his own. His filings are literate, comprehensible, and well-reasoned, and he attaches numerous exhibits in support of his briefs and other legal documents. For all of these reasons, the Motion for Appointment of Counsel will be denied without prejudice at this time. Should further proceedings show the need for counsel, the matter can be reconsidered, either *sua sponte* or upon a motion properly filed.

## II. Motions to Dismiss

### A. Standard of Review

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When considering a Rule 12(b)(6) motion to dismiss, the court must view the complaint in the light most favorable to the plaintiff and must accept all well-pleaded allegations as true. See Erickson v. Pardus, 551 U.S. 89, --, 127 S. Ct. 2197, 2200 (2007); Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply

7

calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original and internal citations omitted). The court need not accept unsupported inferences, Cal. Pub. Employees Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), nor legal conclusions cast as factual allegations, Twombly, 550 U.S. at 556. Legal conclusions without factual support are not entitled to the assumption of truth. See Ashcroft v. Iqbal, --- U.S. ---, ---, 129 S. Ct. 1937, 1949–50 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

Once the court winnows conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. The complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion. See Fed. R. Civ. P. 8(a)(2).

The Court of Appeals for the Third Circuit has instructed us to read pro se complaints liberally, especially pro se prisoners, who "are often at an informational disadvantage that may prevent them from pleading the full factual predicate for their claims." Spruill, 372 F.3d at 236 n.12 (citing Alston v. Parker, 363 F.3d 229, 233–34 & n.6 (3d Cir. 2004)).

### B. Deliberate Indifference to a Substantial Risk of Serious Harm

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). Deliberate indifference may be shown by intentionally denying or delaying medical care such that the prisoner is exposed to a sufficiently substantial risk of serious damage to his future health. Giles, 571 F.3d at 330; Farmer, 511 U.S. at 843; Estelle v. Gamble, 429 U.S. 97, 104 (1976). To be liable under the Eighth Amendment, a prison official must have <u>known and disregarded an excessive risk to inmate health or safety</u>; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Under the deliberate indifference reckless standard, 'prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk.'" Giles v. Kearney, 571 F.3d at 330 (quoting Farmer, 511 U.S. at 844).

Only unnecessary and wanton infliction of pain or deliberate indifference to the serious medical needs of prisoners are egregious enough to rise to the level of a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Deliberate indifference can be (1) intending to inflict pain on a prisoner, (2) denying reasonable requests for medical treatment that

9

result in undue suffering or the threat of tangible residual injury, (3) knowing about the need for the inmate's medical care but intentionally refusing to provide such care, (4) delaying necessary medical treatment for non-medical reasons, and/or (5) providing an easier and less efficacious treatment to the inmate. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Neither allegations of medical malpractice, negligence, nor disagreement as to the proper medical treatment are sufficient to establish a Constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

A medical need is serious if (1) a doctor has diagnosed the malady as needing treatment, (2) the malady is so obvious that a lay person could easily recognize the need for a doctor, (3) the delay or denial of adequate medical care results in unnecessary and wanton pain, and/or (4) the delay or denial of treatment results in a life-long handicap or permanent loss. See Monmouth County Corr. Inst. Inmates, 834 F.2d at 347. None of the parties disputes the seriousness of Whetstone's medical need for the purpose of the Motions to Dismiss. The issue in this case is whether Whetstone has alleged the mindset necessary to show that Defendants were deliberately indifferent to his admittedly serious need.

1. **Medical Defendants**

As for the medical defendants, Dr. Stanish, Dr. Bohinski, Nurse Smith, and Dr. Ellers, we find that Whetstone has stated a plausible cause of action against Drs. Stanish and Bohinski, and Nurse Smith, but not against Dr. Ellers.

In order to be held liable under § 1983, a defendant must have "personal involvement" in the alleged violations of federal law. See Thomas v. Independence Twp., 463 F.3d 285, 298–99 (3d Cir. 2006); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement

can be shown by "allegations of personal direction or of actual knowledge and acquiescence." Id. Liability under § 1983 cannot be based on a theory of respondeat superior. Id. The allegations must be made with "appropriate particularity." Id. A complaint adequately alleges personal involvement "where it states the conduct, time, place, and persons responsible" for the alleged violations of federal law. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). This requirement prevents liability under § 1983 for one's own official actions from collapsing into respondeat superior liability for the actions of others. See Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981) ("Petitioners were not personally involved in the handling of the packages and respondent's basic allegation appears to be that subordinates of petitioners violated established procedures which, if properly followed, would have ensured the proper delivery of respondent's packages. In the past, this Court has refused to accept § 1983 actions premised on theories of respondeat superior.").

Whetstone fails to allege any personal involvement by Dr. Ellers. It appears that Whetstone's only reason for suing Dr. Ellers is due to Dr. Ellers' position as Director of the Bureau of Health Care Services. Despite the liberal notice pleading standards of the Federal Rules of Civil Procedure, Dr. Ellers' position as Director of the Bureau of Health Care Services is not enough personal involvement to sustain a cause of action against the Motion to Dismiss. Plaintiff fails to plead with particularity the conduct, time, and place that provides the base for Plaintiff's claim against Dr. Ellers. Plaintiff has alleged no act of Dr. Ellers' or any other mention of involvement during his injury, treatment, and surgery. Plaintiff must plead facts that make it plausible to sustain a cause of action against a Motion to Dismiss, and Plaintiff has failed to so allege against Dr. Ellers.

Whetstone pleads facts that make it plausible that Dr. Stanish, Dr. Bohinski, and Nurse Smith engaged in behavior that amounted to deliberate indifference to a substantial risk of harm to a serious medical need. Whetstone's allegations support plausibly that all of the examples of deliberate indifference except for intentional infliction of pain might have occurred by these defendants. Specifically, Whetstone makes the following allegations:

- After Whetstone's injury, Nurse Smith delayed treatment, telling Whetstone that his injury was not an emergency and to sign up for sick call, and only provided Whetstone with ice and iodine. "[Nurse Smith's] initial action warrants his injury would go untreated and be addressed 3 days later at sick call."

- Despite Whetstone's complaints of extreme pain and requests for further evaluation and treatment, Nurse Smith told Whetstone to "[g]o back to the block or to the hole."

- When Whetstone saw Dr. Bohinski at sick call, Dr. Bohinski declined to grant Whetstone's request for an MRI, despite Whetstone's statement that only an MRI would show muscle damage. Plaintiff was in extreme pain, but Dr. Bohinski failed to give Whetstone a brace or restraint; Whetstone alleges that such a device would have lessened his pain. Whetstone alleges that because he lacked a restraint or brace, he remained in pain and returned many times to sick call in an attempt to have his pain treated.

- When Whetstone saw Dr. Stanish at sick call on January 2, 2007, Dr. Stanish observed the condition of Whetstone's injury and remarked that Whetstone had sustained major damage. Despite Dr. Stanish's knowledge of Whetstone's injury, he let Whetstone return to his housing unit and only prescribed him non-aspirin.

- After Whetstone's surgery, he went to sick call on May 21, 2007. Dr. Stanish examined him and concluded that his surgery was not successful.

- Whetstone's pain continued, and on October 9, 2007, he met with Dr. Bohinski at sick call. Whetstone explained his pain and difficulty sleeping on the top bunk, and requested a medical single cell, which Dr. Bohinski denied. "[D]efendant Dr. Bohinski declined to give single cell status, even after plaintiff pleaded about the fear of bumping into the ladder and cabinet in the cell which would invoke more pain and damage."

- On October 12, 2007, Dr. Bohinski told Whetstone that his second surgery (to correct what the first had not fixed) was "denied by an unknown committee."

12

Whetstone is specific in his allegations against Drs. Bohinksi and Stanish, and Nurse Smith. He provides details of their interactions and identifies when incidents occurred. Whetstone's allegations against these defendants are particular, and when accepted as true, withstand the scrutiny of a Rule 12(b)(6) motion.

2. **Non-Medical Defendants**

As for the non-medical defendants, to fulfill the deliberate indifference element, Whetstone must show that the non-medical prison officials had reason to believe or actually knew that prison doctors or their assistants were mistreating or not treating Plaintiff. See Spruill, 372 F.3d at 236. "If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. . . . [A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. According to the Third Circuit, the plaintiff has the burden to plead that the non-medical defendants were aware of the alleged inadequacies in the plaintiff's medical treatment:

> [D]ismissal of [plaintiff]'s claims against [defendant] after the point at which [plaintiff] was first under medical care is appropriate because [plaintiff] bears the burden of proving (and hence pleading) facts supporting the defendants' mental states, . . . and he has failed to so plead with respect to [defendant]. . . . [plaintiff]'s complaint is lacking not because it fails to allege specific facts to support [defendant]'s mental state (which, at all events, would be unnecessary under our notice pleading standard . . . ), but rather because it does not so much as suggest that [defendant] was aware of the alleged inadequacies in [plaintiff]'s medical treatment.

Id. at 236 & n.12. As discussed supra, a defendant must be personally involved in the civil rights violations; a § 1983 claim cannot be premised on a theory of respondeat superior.

The involvement of each non-medical defendant in Whetstone's on-going medical need is limited to the responding to or review of Whetstone's inmate grievance. In the Third Circuit, merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim:

> The Third Circuit Court of Appeals requires a defendant's contemporaneous, personal knowledge and acquiescence, in order to establish personal knowledge. After the fact knowledge will not suffice. Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement. See Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (nonprecedential) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); see also Burnside v. Moser, 138 Fed. Appx. 414, 416 (3d Cir.2005) (failure of prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

Diaz v. Palakovich, No. 07-CV-2190, 2009 U.S. Dist. LEXIS 25186, at *11–12, 2009 WL 811712, * 4 (M.D. Pa. Mar. 26).

As to non-medical Defendant Kneiss, we find that Whetstone has failed to state a claim against Defendant Kneiss. Whetstone alleges no fact that could plausibly form a claim of liability against Defendant Kneiss. According to Whetstone's Complaint, Defendant Kneiss's only involvement in this case is his denial of Grievance No. 204404, which is not enough to allege the personal involvement of Kneiss.

As to non-medical Defendant Wynder, we find that Whetstone has failed to state a claim against Defendant Wynder. Whetstone alleges no fact that could plausibly form a claim of liability against Defendant Wynder. According to Whetstone's Complaint, Defendant Wynder's

14

only involvement in this case is his upholding of the denial of Grievance No. 204404. This is not sufficient to support a cause of action against Defendant Wynder.

As to non-medical Defendant Ginocchetti, we find that Whetstone has failed to state a claim against Defendant Ginocchetti. Whetstone alleges no fact that could plausibly form a claim of liability against Defendant Ginocchetti. The only mention of Defendant Ginocchetti in the Complaint is in the prayer for relief, where Plaintiff requests damages against her for supervisory liability for her ongoing pattern of foreseeable violation and failure to act and direct, which resulted in emotional and physical damage. Plaintiff also attaches a copy of Grievance No. 177718, to which Defendant Ginocchetti replied. As previously stated, simply responding to a grievance is not enough personal involvement to allege deliberate indifference. Furthermore, deliberate indifference may not be alleged by a theory of respondeat superior. This is not sufficient to support a cause of action against Defendant Ginocchetti.

### C. Equal Protection Claim

In Whetstone's Complaint, Whetstone states that he brings his claim pursuant to 42 U.S.C. § 1983 due to "his subsequent denial of another surgery because plaintiff is a lifer and he argues discrimination in violation of the Equal Protection Clause" (Doc. 1). In Paragraph 27 of his Complaint, Plaintiff makes the following allegation: "On October 12, 2007, Plaintiff was told by defendant Dr. Bohinski second surgery denied by unknown committee, asked if second surgery was denied because he was a lifer, he didn't respond to this claim only responded that second surgery was denied."

The Fourteenth Amendment provides in part that "[n]o State shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated persons be

treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). "An equal protection claim can be brought by a 'class of one,' a plaintiff alleging that he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Travillion v. Leon, 248 F. App'x 353, 354 (3d Cir. 2007) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)). "If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest." Jackson v. Gordon, 145 F. App'x 774, 777 (3d Cir. 2005) (quoting Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 423 (3d Cir. 2000)). Although those imprisoned for life ("lifers") are not a suspect or quasi-suspect class, we are still obligated to consider whether the prison had a rational basis for denying Whetstone his second surgery. Accord Milan v. Chen, No. 05-CV-1878, 2008 WL 2229215, at *12 (C.D. Cal. Feb. 5).

Whetstone's Complaint fails to state an Equal Protection claim based upon his status as a "lifer" because he fails to allege that (1) non-lifers who received surgery or other medical care were similarly situated to Whetstone and (2) there was no rational basis to support SCI-Dallas's decision to deny the second surgery. Plaintiff fails to allege or mention further his Equal Protection claim in the Complaint. Notably, as the Corrections Defendants point out, "Whetstone does not allege . . . that other inmates who are not serving a sentence of life in prison received additional surgeries of the nature of this one, despite an opinion that those additional surgeries posed a significant risk of failure." Further, Defendants put forth an explanation for the decision to deny the surgery: a second surgery would run the significant risk of failure. Whetstone was advised of this reason in the response to Grievance No. 204404, in which the responding officer wrote: "A second surgery that was recommended by Dr. Girton was later

16

denied due to the 'significant risk of failure,' and an alternative treatment of physical therapy was instead ordered." We will grant the Motion to Dismiss as to Whetstone's Equal Protection claim.

D. **Futility of Leave to Amend**

Giving due consideration to the above, we note that the court must construe all pleadings "as to do substantial justice." Fed. R. Civ. P. 8(f). In a case where the plaintiff's complaint is deficient—but curable by amendment—and the defendant has moved to dismiss, the court must inform the plaintiff that the plaintiff has leave to amend within a set period of time even if the plaintiff has not requested leave to amend, unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000).

We have already granted Whetstone an opportunity to amend his complaint, an opportunity of which he has not availed himself.[2] Whetstone requested an opportunity to amend his Complaint after he received the Motion to Dismiss of Drs. Stanish and Bohinski, but before he received the Corrections Defendants' Motion to Dismiss.

As to the non-medical Defendants, we find that granting Whetstone further leave to amend would be futile because Whetstone's theory of liability is predicated on those defendants' responses to inmate grievances, which as discussed above, without more, is not enough personal involvement to sustain a deliberate indifference claim. Whetstone makes no claim or other

---

[2] Whetstone never filed an amended complaint nor does it appear that his Motion provided the substance for his amendment. In his Motion to File an Amended Complaint (Doc. 24), Whetstone states that "[t]he following paragraphs are amended to reflect the full knowledge of harm to Plaintiff: VI. Statement of Claim, 2), 3)." His Motion was devoid of substantive changes. At no point has Whetstone provided the substance for his amendment.

17

references to further involvement on the part of those defendants; thus we have no reason to believe other facts exist to support a claim of deliberate indifference.

As to Dr. Ellers, the only medical defendant to be dismissed in this order, we find that granting Whetstone further leave to amend would be futile because Whetstone's theory of liability is predicated on respondeat superior, which as discussed above, without more is not enough personal involvement to sustain a deliberate indifference claim. Whetstone fails to make any factual allegation regarding an act or omission committed by Dr. Ellers in his Complaint.

A complaint filed by a pro se party should not be dismissed by a 12(b)(6) motion "unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hughes v. Rowe, 449 U.S. 5, 10 (1980). Given the information presented to us, we are confident beyond a doubt that Whetstone cannot sustain a cause of action against Defendants Wynder, Kneiss, Ginocchetti, and Ellers, nor can he state any Equal Protection claim.

## CONCLUSION

Considering the motion to dismiss plausibility standard, the facts pleaded establish that Whetstone's claim is plausible as against Defendants Bohinski, Stanish, and Smith. Therefore, Plaintiff's case will proceed against Defendants Stanish, Bohinski, and Smith, but will be dismissed as to Defendants Wynder, Kneiss, Ginocchetti, and Ellers. Remaining Defendants' answer will be due within twenty (20) days. An appropriate order follows.

18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DWIGHT WHETSTONE,

        Plaintiff,

    v.

R.S. ELLERS, et al.,

        Defendants.

Case No. 3:08-CV-2306

(Judge Kosik)

## ORDER

AND NOW, this 24th day of September, 2009, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motions for Counsel (Docs. 4 & 25) are **DENIED WITHOUT PREJUDICE**;

2. Defendants Stanish and Bohinski's Motion to Dismiss (Doc. 14) is **DENIED**;

3. Defendants Ellers, Wynder, Kneiss, Ginocchetti, and Smith's Motion to Dismiss (Doc. 31) is **GRANTED** as to Ellers, Wynder, Kneiss, and Ginocchetti, and **DENIED** as to Smith; and

4. The Answer of remaining Defendants Stanish, Bohinski, and Smith is due within twenty (20) days.

Edwin M. Kosik
United States District Judge