# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DWIGHT WHETSTONE,** | : | **Civil No. 3:08-CV-2306** |
| | : | |
| **Plaintiff,** | : | **(Judge Kosik)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **STANLEY BOHINSKI, D.O., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION AND ORDER

### I.    Statement of Facts and of the Case.

This is a civil rights action brought by Dwight Whetstone, a state inmate. In his complaint, Whetstone, who is proceeding *pro se*, has named a number of medical staff and health care providers as Defendants, alleging that these staff violated his constitutional rights when they demonstrated deliberate indifference to his serious medical needs following a December 31, 2006 weight lifting injury suffered by Whetstone in the prison.

This matter now comes before the Court on a Motion to Compel filed by Whetstone which seeks further discovery responses from the remaining Defendants in this case.[1] (Doc. 58.) This motion has been fully briefed by the parties, (Docs. 59,

---

[1]On September 24, 2009, this Court granted the Corrections Defendants' Motion to Dismiss as to Ellers, Wynder, Kneiss, and Ginochetti. The sole remaining defendants in this action are defendants Smith, Stanish and

60, 61, 62, 63, and 65), a process which has helped to clarify the nature of this ongoing discovery dispute.

As described by the parties, the disputed discovery issues fall into the following four general categories:

First, Whetstone seeks access to his own medical records relating to the treatment he received arising out of this December 31, 2006 injury. The Defendants do not appear to object to this discovery but believe that Whetstone should follow the existing Department of Corrections procedures when requesting and obtaining these medical records.

Second, Whetstone seeks access to his own psychiatric records, in order to demonstrate that he was not regarded as a malingerer or problematic inmate at the time of this injury. The Defendants have objected, in part, to the release of this information alleging that wholesale release of diagnostic impressions may chill the candor of psychiatric medical staff when conducting inmate assessments.

Third, Whetstone appears to request any information relating to the prison's handling of administrative complaints which he submitted relating to this incident.

Fourth, Whetstone also requests records of other inmate complaints regarding indifference to their medical needs lodged against the Defendants from December

Bohinski.

2006 through November 2009. Whetstone seeks this information as part of an effort to determine whether the treatment he received was part of a pattern of conduct by the Defendants. The Defendants have objected to the disclosure of this information arguing that it is not calculated to lead to the discovery of otherwise admissible evidence, and that disclosure of other third-party complaints may violate the personal privacy of those third parties.

For the reasons set forth below, Whetstone's motion will be granted, in part, and denied, in part.

## II.    Discussion

### A. Rule 26, the Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines both the scope and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Whetstone's motion, and the Defendants' response in opposition to this motion, call upon the Court to exercise its authority under Rule 26 of the Federal Rules of Civil procedure to regulate discovery in this case. Issues relating to the scope of discovery permitted under the Rules rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense". Therefore, valid claims of privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Applying these benchmark standards, we now turn to the discovery requests propounded by Whetstone.

**B.** **Whetstone May Review His Own Medical Records Pursuant to Department of Corrections Policies and Procedures**

At the outset, Whetstone seeks to review his prison medical records relating to the treatment he received following his December 31, 2006 injuries. The Defendants note that, with respect to this request, when an inmate initiates a request for production of his own medical records, in accordance with the DC-ADM 003, "Release of Information," the Department's procedure provides a method by which he is given a reasonable amount of time to examine and inspect the requested documents. As part of this procedure, the inmate must initiate this process by submitting Department Form DC-135A "Inmate Request to Staff" to the Superintendent's Assistant or his/her designee at his current institution. The inmate may then review the documents and obtain copies of any documents at his expense; however, charges for the photocopies are made in accordance with the Department's policies and procedures.

Thus, we understand that the Defendants do not object to Whetstone's access to his own medical records. Rather, they simply urge the Court to direct Whetstone to comply with these procedures when requesting medical records.

We believe that compliance with the prison regulations is a fitting and proper procedure for Whetstone to follow in securing access to these medical records.

5

Indeed, in this regard we note that courts have frequently directed or encouraged

inmates to comply with reasonable institutional procedures when securing copies of

their own prison medical records for litigation purposes. See, e.g., Bull v. United

States, 143 F.App'x 468 (3d. Cir. 2005); Daniels v. Kelchner, No. 05-1601, 2007 WL

2068631 (M.D. Pa. July 17, 2007). Therefore, with respect to this request, it is

ordered that Whetstone's request be granted, in part, provided that he completes the

procedures prescribed by Department of Corrections policies.[2]

---

[2]We note that those policies, in part, call for Whetstone to bear the cost of
making copies of these medical records. While Whetstone has not made a specific
request to have the Defendants bear these costs, we note that nothing in 28 U.S.C.
§ 1915 authorizes federal courts to finance or pay for a party's discovery expenses
incurred while prosecuting a lawsuit, even if that party has been granted leave to
proceed *in forma pauperis* under 28 U.S.C. § 1915(a).  Review of the case law
reveals that numerous courts within and without the Third Circuit have recognized
the limitations of federal courts to relieve indigent litigants from the costs of pre-
trial discovery.  See, e.g., Brooks v. Quinn, 257 F.R.D. 515, 417 (D. Del. 2009)
("Although plaintiff is proceeding in forma pauperis, the court has no authority to
finance or pay for a party's discovery expenses. . . . It is plaintiff's responsibility
to pay for the costs associated with the taking of a deposition."); Augustin v. New
Century TRS Holding, Inc., No. 08-326, 2008 U.S. Dist. LEXIS 96236, at *7-9
(W.D. Pa. Nov. 25, 2008) (denying plaintiff's IFP application to cover costs for
discovery requests); Badman v. Stark, 139 F.R.D. 601, 605 (M.D. Pa. 1991) (28
U.S.C. § 1915 does not require the government to advance funds for deposition
expenses); Toliver v. Community Action Comm'n to Help the Econ., 613 F. Supp.
1070, 1072 (S.D.N.Y. 1985) (no clear statutory authority for the repayment of
discovery costs for IFP plaintiff); Sturdevant v. Deer, 69 F.R.D. 17, 19 (E.D. Wis.
1975) (concluding that 28 U.S.C. § 1915 "does not extend to the cost of taking and
transcribing a deposition."); Ebenhart v. Power, 309 F. Supp. 660, 661 (S.D.N.Y.
1969) ("Grave doubts exist as to whether [28 U.S.C. § 1915] authorizes this court
to order the appropriation of Government funds in civil suits to aid private

### C. Whetstone May Obtain Access to His Own Psychiatric Records, Subject to Appropriate Confidentiality Restrictions.

Whetstone also seeks access to his own institutional psychiatric files, in order to demonstrate that he was not a malingerer or otherwise a problematic inmate at the time of this incident. The Defendants have objected to the release of the entire inmate psychiatric file, citing concerns that such disclosure compromises honest opinions and frank evaluations and could potentially subject staff and treating professionals to retribution, thereby inhibiting candid observations from these individuals.

We note that similar claims have been made, and accommodated, by the Courts and correctional officials in the past. For example, in Mincy v. Chmielewski, No. 05-292, 2006 WL 3042968 (M.D.Pa. Oct. 25, 2006), this Court faced a similar request, which the Court resolved in terms that are equally applicable here. As the Court observed in that case:

> Plaintiff also seeks the release of psychological records. Defendants oppose general disclosure of these documents for a number of reasons

litigants in conducting pre-trial discovery."); see also Tabron v. Grace, 6 F.3d 147, 159 (3d Cir. 1993) ("There is no provision in [28 U.S.C. § 1915] for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant.").

Thus, as a general rule, the Court lacks the lawful authority to help finance, or relieve Plaintiff from, the costs associated with taking pre-trial discovery.

. . .point[ing] out that the value of mental health records lies in the candid nature of the information.. Disclosure compromises honest opinions and frank evaluations and could potentially subject staff and treating professionals to retribution, thereby inhibiting candid observations from these individuals. Also of concern is that disclosure could reveal the "methods and manner used to monitor inmate behavior" which may lead to inaccurate assessments, improper institutional placement, and premature release.

Despite these valid objections, defendants have agreed to release certain medical and mental health information pertinent to plaintiff's admission to the psychiatric observation cell during his hunger strike in late November and early December 2004, provided plaintiff agrees to execute a confidentiality agreement. Given that this is the only time period relevant to the complaint, the court finds that defendants' proposal is reasonable. Defendants will be required to release the pertinent mental health records, provided the precondition of execution of a confidentiality agreement is met.

Mincy 2006 WL 3042968, 2 (M.D.Pa. Oct. 25, 2006)(internal citations omitted).

In this case we will follow the course prescribed in Mincy, and grant this request, in part, subject to temporal limits and the execution of appropriate releases and confidentiality agreements. Thus, Whetstone's motion is granted, to the extent that he seeks access to records that are contemporaneous with the time period of the injury, December 2006 through June 2007, provided the precondition of execution of a confidentiality agreement is also met by the Plaintiff.[3]

---

[3]Furthermore, if this limited disclosure entails the potential release of some particularly sensitive diagnostic impression and conclusions, the Defendants may bring that matter to our attention and seek any further appropriate form of protective order. Similarly if Whetstone believes that disclosure of records

**D.      Whetstone is Entitled to Copies of His Own Grievances and Prison Responses Relating to The Incident that is the Subject of this Litigation**

In his motion to compel Whetstone also seeks access to various prison grievances. First, Whetstone asks for records relating to any grievances he filed arising out of this medical treatment. This is an appropriate request, and will be granted.

**E.      Other Inmate Grievances Citing Medical Neglect and Naming These Defendants Will be Submitted for In Camera Review**

In addition to requesting copies of his own grievances, Whetstone asks for any grievances submitted by other inmates between December 2006 and November 2009, citing the Defendants for medical mistreatment, indifference or neglect. Whetstone argues that this material is relevant to his case because it may disclose a pattern or common course of conduct on the part of the Defendants, something which would be probative of a claim of deliberate indifference to serious medical needs.

The Defendants have objected to this request citing several grounds. First, the Defendants contend that the disclosure of these third party complaints would violate the privacy rights of those third parties. See Mincy v. Chmielewski, No. 05-292, 2006

_____

encompassing a broader range of time is necessary he may file an appropriate motion as well.

WL 3042968 (M.D.Pa. Oct. 25, 2006)(denying access to third-party complaints on privacy grounds). In addition, the Defendants contend that this material is not relevant or calculated to lead to the discovery of admissible evidence since evidence of other wrongs is not admissible in federal proceedings. Finally, the Defendants note that the release of grievances which are mere allegations, particularly those which are not substantiated, may be far more prejudicial to the Defendants than probative for the Plaintiff.

This particular request is far more legally complex and problematic on a number of grounds, and therefore requires a more thorough analysis and response than the current record permits. At the outset, we recognize that there are legitimate third-party privacy interests that may need to be addressed and protected in connection with this request. However, with respect to the Defendants' relevance objection, we believe that the Defendants may misconstrue both the standards that govern discovery and those that control admissibility of other acts evidence in federal cases. The scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined broadly. Thus, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence".

As we understand it, Whetstone seeks information concerning other claimed episodes of medical neglect by the Defendants in order to establish a pattern of behavior by the Defendants, a pattern that would allow a fact-finder to infer a motive and intent, and a pattern that would rebut any claim of mistake or innocent error. If this is the basis for his request, then the request may, in fact, "lead to the discovery of admissible evidence."

Rule 404(b) of the Federal Rules of Evidence governs the admissibility of other acts evidence and provides as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed. R. Evid. 404(b). With respect to the admissibility of Rule 404(b) other act evidence:

> While . . . Rule 404(b) is "construed as a rule of inclusion rather than exclusion," United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir.1988) (internal quotation marks omitted), [the courts] have also cautioned that the . . . reasons for introducing prior bad acts evidence may be a combination of showing a "consequential fact as well as ... impugn [ing a party's] character." United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir.1994) (quoting United States v. Sampson, 980 F.2d 883, 886 (3d Cir.1992)). Therefore, "when evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that the [party] has the propensity to commit the [act] charged." United States v.

Himelwright, 42 F.3d 777, 782 (3d Cir.1994) (citing Jemal, 26 F.3d at 1272).

United States v. Lindsay 339 F. App'x 268, 272 (3d. Cir. 2009)

In this case, given the fact that Rule 404(b) is defined as a "rule of inclusion", there may well be information in other inmate grievances which would be admissible under the Rule as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed. R. Evid. 404(b). However, no judgement on the relevance and admissibility of this evidence is possible in the abstract, and any assessment of these issues involves a multi-faceted and fact-specific analysis of both the proffered evidence and the party's claims. Recognizing that these prison records may contain arguably discoverable material, we note that in the past courts have reconciled the interests of inmate-plaintiffs and corrections officials by rejecting broadly framed requests for access to prison records, see Paluch v. Dawson, No. 06-1751, 2007 WL 4375937, *4-5 (M.D. Pa. Dec. 12, 2007), while conducting an *in camera* review of those records which may be relevant to more narrowly tailored discovery demands. Paluch v. Dawson, No. 06-175, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008).

This is the course we will adopt here. We will direct the Defendants to provide to the Court for its *in camera* inspection any other responsive inmate grievances submitted between December 2006 and November 2009, citing the Defendants for medical mistreatment, indifference or neglect. Armed with this information the Court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and, (3) to what extent, in what format, and under what conditions it may be released to the Plaintiff.

Accordingly, this 4th day of March 2010, it is ORDERED that the Plaintiff's motion to compel, (Doc. 58), is GRANTED, in part, and DENIED, in part, as follows:

First, with respect to Whetstone's request for access to his own medical records, it is ordered that Whetstone's request is granted, in part, provided that he completes the procedures prescribed by Department of Corrections policies.

Second, with respect to Whetstone's request for access to his own psychiatric records, this motion is granted, to the extent that he seeks access to records that are contemporaneous with the time period of the injury, December 2006 through June 2007, provided the precondition of execution of a confidentiality agreement is also met by the Plaintiff.

Third, the Plaintiff's request for access records relating to any grievances he filed arising out of this medical treatment is an appropriate request, and is granted.

Fourth, on or before <u>March 17, 2010</u>, we direct the Defendants to provide to the Court for its *in camera* inspection any other responsive inmate grievances submitted between December 2006 and November 2009, citing the Defendants for medical mistreatment, indifference or neglect. Armed with this information the Court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and, (3) to what extent, in what format, and under what conditions it may be released to the Plaintiff.


<u>*S/Martin C. Carlson*</u>
**United States Magistrate Judge**