# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DWIGHT WHETSTONE,** | : | Civil No. 3:08-CV-2306 |
| **Plaintiff,** | : | (Judge Kosik) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **STANLEY BOHINSKI, D.O., et al.,** | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION AND ORDER

### I. Statement of Facts and of the Case.

This is a civil rights action brought by Dwight Whetstone, a state inmate. In his complaint, Whetstone, who is proceeding *pro se*, named a number of medical staff and health care providers as Defendants, alleging that these staff violated his constitutional rights when they demonstrated deliberate indifference to his serious medical needs following a December 31, 2006 weight lifting injury suffered by Whetstone in the prison.

In March 2010 this Court considered a Motion to Compel filed by Whetstone which sought further discovery responses from the remaining Defendants in this case. (Doc. 58.) Specifically, in this motion Whetstone sought the following four general categories of information: First, Whetstone sought access to his own medical records relating to the treatment he received arising out of this December 31, 2006 injury.

Second, Whetstone sought access to his own psychiatric records, in order to demonstrate that he was not regarded as a malingerer or problematic inmate at the time of this injury. Third, Whetstone requested information relating to the prison's handling of administrative complaints which he submitted relating to this incident. Fourth, Whetstone also requested records of other inmate complaints regarding indifference to their medical needs lodged against the Defendants from December 2006 through November 2009, as part of an effort to determine whether the treatment he received was part of a pattern of conduct by the Defendants.

On March 3, 2010 we entered an opinion and order which granted Whetstone's motion, in part, and denied it, in part. (Doc. 66). Specifically, we instructed the Defendants to provide Whetstone with access to his own medical records; his own prior institutional complaints; and portions of his own prior psychiatric records, subject to some limitations. (Id.)

As for Whetstone's request for access to other contemporaneous prison grievances relating to these Defendants, in our March 3 opinion and order we found that there may well be information in other inmate grievances which would be admissible under Rule 404(b) of the federal Rules of Evidence as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed. R. Evid. 404(b). However, no judgment on the relevance and

admissibility of this evidence could be made in the abstract, and any assessment of these issues would involve a multi-faceted and fact-specific analysis of both the proffered evidence and the party's claims.

Recognizing that these prison records may contain discoverable material, we noted that in the past courts have reconciled the interests of inmate-plaintiffs and corrections officials by rejecting broadly framed requests for access to prison records, see Paluch v. Dawson, No. 06-1751, 2007 WL 4375937, *4-5 (M.D. Pa. Dec. 12, 2007), while conducting an *in camera* review of those records which may be relevant to more narrowly tailored discovery demands. Paluch v. Dawson, No. 06-1751, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008). We then adopted this course, and directed the Defendants to provide to the Court for its *in camera* inspection any other responsive inmate grievances submitted between December 2006 and November 2009, citing the Defendants for medical mistreatment, indifference or neglect, so we could determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and, (3) to what extent, in what format, and under what conditions it may be released to the Plaintiff.

The Defendants have now filed motions asking us to reconsider this aspect of our March 3 order. (Docs. 67 and 70.) These motions reveal that, as to Defendant

Evelyn Smith, a computerized search discloses that no grievances were filed against Smith by inmates between December 2006 and November 2009. Thus, as to Smith, this reply fully addresses Whetstone's request.

With respect to Defendants Stanish and Bohinski, the Defendants allege that compliance with the Court's order would require a manual inspection of 552 grievances, a process which the Defendants estimate would take 50 hours to complete. Citing the burden which this review would impose upon the Defendants, and a district court opinion in <u>Lyons v. Beard</u>, No. 3:CV-07-2278 (M.D. Pa. March 8, 2010)[1] which considered the burdens of a manual grievance search in another prison case, the Defendants urge us to reconsider our prior ruling and relieve them from the responsibility of conducting this manual search.

This matter has been fully briefed by the parties, (Docs. 67, 68, 70, 71, 74, 75) and is now ripe for resolution. For the reasons set forth below, the Defendant's motions to reconsider will be granted, in part, and denied, in part.

---

[1] We have reviewed the opinion in <u>Lyons</u> with great care and interest, noting both its potential application here, and one curious anomaly. In <u>Lyons</u>, the court observed that the defendants contended that a manual search of 1,000 inmate grievances would take 40-50 hours. <u>Lyons v. Beard</u>, No. 3:CV-07-2278, Op. At 4 (M.D. Pa. March 8, 2010). Here, the number of grievances to be reviewed is only half that described in <u>Lyons</u>, 552, but the amount of time the defendants claim that it would take to conduct the search is actually alleged to be greater, "at least 50 hours." (Doc. 68)

## II. Discussion

The legal standards that govern motions to reconsider are both clear, and clearly compelling. As the Defendants acknowledge, "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Typically such a motion should only be granted in three, narrowly defined circumstances, where there is either : "(1) [an] intervening change in controlling law; (2) availability of new evidence not previously available; or, (3) need to correct a clear error of law or prevent manifest injustice". Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992 ).

Thus, it is well-settled that a mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. Dodge, 796 F.Supp. at 830. Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995). Moreover, it is evident that a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court. Dodge, 796 F.Supp. at 830. Rather, such a motion is appropriate only where the court has misunderstood a party or where there has been a significant

change in law or facts since the court originally ruled on that issue. See Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

These legal restrictions on motions to re-consider apply with particular force to motions addressing orders in discovery matters, since discovery orders are governed by Rule 26(b)(1) of the Federal Rules of Civil Procedure, and the scope of discovery permitted under the Rules rests in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches "nonprivileged matter that is relevant to any party's claim or defense". Therefore, valid claims of privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

In this case, Whetstone has requested any grievances submitted by other inmates between December 2006 and November 2009, citing the Defendants for medical mistreatment, indifference or neglect, arguing that this material is relevant to his case because it may disclose a pattern or common course of conduct on the part of the Defendants, something which would be probative of a claim of deliberate indifference to serious medical needs. As we understand it, Whetstone seeks information concerning other claimed episodes of medical neglect by the Defendants in order to establish a pattern of behavior by the Defendants, a pattern that would allow a fact-finder to infer a motive and intent, and a pattern that would rebut any claim of mistake or innocent error. Given the proffered basis for his request, the request may, in fact, "lead to the discovery of admissible evidence," since Rule 404(b) of the Federal Rules of Evidence, which governs the admissibility of other acts evidence, provides that: "Evidence of other crimes, wrongs, or acts . . . may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed. R. Evid. 404(b). With respect to the admissibility of Rule 404(b) other-act evidence., the rule is "construed as a rule of inclusion rather than exclusion," United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir.1988) (internal quotation marks omitted). Therefore, given the fact that Rule 404(b) is defined as a "rule of inclusion",

these other inmate grievances may be admissible under the Rule as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed. R. Evid. 404(b).

In their motion to re-consider the Defendants do not dispute this relevance analysis, which formed the legal basis for the Court's March 3 ruling. Rather, the Defendants simply invite the Court to re-assess its prior ruling, given the potentially burdensome nature of this manual document search. However, it is also evident that no final judgement on the relevance and admissibility of this evidence is possible in the abstract, and any assessment of these issues must involve a fact-specific analysis of both the proffered evidence and the party's claims. Recognizing that these prison records may contain arguably discoverable material, on March 3, 2010, we directed the Defendants to provide to the Court for its *in camera* inspection any other responsive inmate grievances submitted between December 2006 and November 2009, citing the Defendants for medical mistreatment, indifference or neglect, so we could determine these issues of relevance and privilege.

We continue to believe that this methodology provides the best way of assuring that legitimate discovery requests are addressed, and nothing in the current motions suggests otherwise. However, recognizing that conducting a manual search imposes significant burdens on the Defendants, we are prepared to modify our March 3 order

in two respects. First, we will narrow the scope of this search from the time-period initially sought by Whetstone, between December 2006 and November 2009, to a more specific time-frame, December 2006 to the date of the filing of this lawsuit, December 2008. Thus, the time-frame of the records search is now defined in a way which narrows that search and tailors the search more closely to the events set forth in Whetstone's complaint. Second, we will provide the Defendants a greater period of time in which to complete this search, allowing 30 days for the completion of this search. By taking these two steps we exercise our discretion in a way which addresses the Defendants' concerns regarding the potentially burdensome nature of this request, while continuing to recognize the Plaintiff's right to ensure that relevant evidence is produced prior to trial.

### III. <u>Conclusion</u>

Accordingly, this 13th day of April 2010, it is ORDERED that the Defendants' motions to reconsider, (Docs. 67 and 70), are GRANTED, in part, and DENIED, in part, as follows:

On or before <u>May 13, 2010</u>, we direct the Defendants to provide to the Court for its *in camera* inspection any other responsive inmate grievances submitted between December 2006 and December 2008, citing the Defendants for medical mistreatment, indifference or neglect. Armed with this information the Court can

9

determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and, (3) to what extent, in what format, and under what conditions it may be released to the Plaintiff.

*S/Martin C. Carlson*
**United States Magistrate Judge**