UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DWIGHT WHETSTONE,

        Plaintiff

v.

STANLEY BOHINSKI, D.O., et al.,

        Defendants

Civil No. 3:08-CV-2306

(Judge Kosik)

## MEMORANDUM

Plaintiff, Dwight Whetstone, a state inmate housed at the State Correctional Institution in Dallas, Pennsylvania, filed a pro se 42 U.S.C. § 1983 Complaint against various prison officials arising out of medical treatment Plaintiff received when he suffered a muscle injury attempting to bench press 400 pounds. Before the court is the June 11, 2010 Report and Recommendation of Magistrate Judge Martin C. Carlson, recommending that Defendants' Motions for Summary Judgment (Docs. 78, 82) be granted. For the following reasons, we will adopt the Report and Recommendation of the Magistrate Judge and grant Defendants' Motions.

**Background**

As we did in our Memorandum and Order of September 24, 2009 (Doc. 37), we summarize the factual allegations of Plaintiff as follows.

On Sunday, December 31, 2006, Whetstone suffered an injury while bench pressing weights at SCI-Dallas. Whetstone "felt the grinding and rolling of muscles in his chest and upper arm area." Whetstone approached the lieutenant present in the recreational gymnasium and received permission to go to the infirmary. At the infirmary, Defendant Evelyn Smith ("Nurse Smith"), a registered nurse, questioned him and gave him "ice with iodine, took his blood pressure, [and] told [him] to sign up for sick call for January 2, because this was not an emergency." Whetstone continued to be in pain and requested that more measures be taken to

treat him, however Nurse Smith told him to return to his cell or to go to the hole (RHU). Nurse Smith called Defendant Dr. Bohinski ("Dr. Bohinski"), who prescribed a pill to reduce the high blood pressure and ordered Whetstone to be observed overnight.

On January 1, 2007, Whetstone went to the SCI-Dallas infirmary, where Dr. Bohinski examined him. At the time, Dr. Bohinski was the facility medical director and was responsible for providing care to the inmates. During the examination, Whetstone explained what happened on December 31 and removed his sweatshirt with assistance to show Dr. Bohinski the severe swelling in his left upper arm and left pectoral. Dr. Bohinski stated that he would order an x-ray, however Whetstone disagreed with the effectiveness of an x-ray, because according to Whetstone, an x-ray would not show musculature damage whereas an MRI would. Whetstone did not get a brace or restraint to help him with his injury; Whetstone states that such a brace should have been given to him and is generally available to inmates. Later on that day, Whetstone returned to the infirmary due to extreme pain and requested sleeping pills from the physician's assistant. He only received ice for his injury.

On January 2, 2007, Whetstone again went to the infirmary for sick call. Defendant Dr. Stanish ("Dr. Stanish"), who is the regional medical director for Prison Health Services, Inc., a private corporation, examined Whetstone and stated that "he sustained major damage [and] gave him several dosages of non-aspirin." According to Whetstone, Dr. Stanish observed the visibly amassed swelling and blood in his chest and upper left arm. Dr. Stanish had Whetstone return to his unit.

On January 3, 2007, Whetstone again went to the infirmary, after his shop supervisor told him to go there due to Whetstone's complaints of extreme numbness. At the infirmary, someone told Whetstone to sign up for sick call.

On January 9, 2007, prison officials transported Whetstone to an orthopedic consultation. The consultant told Whetstone that he was in great need of corrective surgery to the repair damage, and that an MRI would determine the extent of the damage. On January

14, 2007, Whetstone was x-rayed at SCI-Dallas. On January 26, 2007, Whetstone had the MRI and was diagnosed by phone call on January 30, 2007 with "pectoralis major ruptured (separated) from supraspiratus [s.i.c.] tendon, muscle rolled into plaintiff's chest."

On February 6, 2007, Whetstone went to sick call to ask for a progress report regarding the scheduling of his surgery. He was told to be patient and received acetaminophen (non-aspirin) pills. Whetstone complained about lack of sleep, but did not receive sleeping pills. On February 16, 2007, Whetstone went to sick call to complain of excruciating pain. He again received acetaminophen.

On March 9, 2007, correctional officers transported Whetstone to see Dr. Keith Girton at St. Catherine's Medical Center in Ashland, Pennsylvania for a consultation. Dr. Girton informed Whetstone that he would perform the surgery. Whetstone inquired about a brace or other device to aid his injury, but Dr. Girton told him that SCI-Dallas would have to work out the device since it does not allow certain braces that contain metal.

On March 20, 2007, Whetstone went to sick call to complain of pain. He received acetaminophen. On March 28, 2007, Whetstone went to sick call to complain of pain. He requested that photographs be taken of his chest. Someone told him to request such photography from Dr. Bohinski. According to Whetstone, Dr. Bohinski failed to respond to his request.

On April 5, 2007, Whetstone was transferred to the State Correctional Institution at Mahanoy ("SCI-Mahanoy") due to his planned surgery. According to Whetstone, the medical staff at SCI-Mahanoy provided appropriate medical care and were very helpful. On April 11, 2007, Dr. Girton performed surgery on Whetstone at St. Catherine's Medical Center. After the surgery, he returned to SCI-Mahanoy later that day. On April 18, 2007, Whetstone returned to SCI-Dallas.

On May 21, 2007, Whetstone went to sick call to complain about "lumpage" in his chest. Dr. Stanish examined Whetstone's chest and determined that the surgery had failed.

Both Dr. Stanish and the physician's assistant agreed with this conclusion.

On May 28, 2007, Whetstone went to sick call to ask for a brace to help him immobilize movement in his chest and upper arm. He also requested to see Dr. Girton again. Someone told Whetstone that an appointment with Dr. Girton was scheduled, but he was not given a date for the appointment. On May 29, 2007, someone called Whetstone to sick call to have another chest exam.

On June 1, 2007, someone called Whetstone to sick call to inform him that Dr. Girton had been contacted regarding Whetstone's concern about his surgery. On July 9, 2007, Whetstone went to sick call where he was notified that Dr. Girton would have a teleconference with him about his post-surgery concerns. On August 19, 2007, Whetstone went to sick call to ask when the teleconference with Dr. Girton would occur. He was told to submit a request slip to Dr. Bohinski.

On September 11, 2007, Whetstone went to sick call to complain about pain. On September 20, 2007, Whetstone had a video conference with Dr. Girton, who stated that Whetstone needed a second surgery. Dr. Girton also stated that he would need approval from SCI-Dallas to perform the second surgery.

On October 9, 2007, Whetstone inquired about the status of his second surgery and also complained about pain and requested a bottom bunk and single cell. Dr. Bohinski refused to give Whetstone a single cell but spoke to Whetstone about his pain and a time frame for the second surgery. On October 12, 2007, Dr. Bohinski told Whetstone that an unknown committee denied Whetstone's second surgery.

On October 17, 2007, Whetstone began alternative treatment of physical therapy in the infirmary. He alleges that he lacked the ability to do the bare minimum physical therapy, and filed Grievance No. 204404 the next day regarding the denial of his second surgery.

According to prison officials, SCI-Dallas continues to provide care to Whetstone through the recommendations of off-site specialists and that his treatment plan is on-going.

Additionally, they have stated in response to the grievance that the second surgery that was recommended by Dr. Girton was denied due to the significant risk of failure. The second surgery was supplanted by physical therapy. The Secretary's Office of Inmate Grievances and Appeals-the final level of review for the grievance-denied the grievance appeal because it was determined that the medical care given to Whetstone was reasonable and appropriate.

## Procedural History

Plaintiff filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 on December 24, 2008. (Doc. 1). In the Complaint, Plaintiff names Mr. R. S. Ellers, Dr. Stanley Stanish, Dr. Stanley Bohinski, Patricia Ginocchetti, Evelyn Smith, James Wynder, and Edgar Kneiss as Defendants. On March 20, 2009, Defendants filed a Motion to Dismiss (Doc. 31), a Brief in Support of the Motion (Doc. 32), and an Appendix (Doc. 33). We issued a Memorandum and Order on September 24, 2009 denying the Motion to Dismiss as to Defendants Stanish, Bohinski, and Smith, and granting the Motion to Dismiss as to Defendants Ellers, Wynder, Kneiss, and Ginocchetti. (Doc. 37).

Defendants Stanish and Bohinski filed an Answer to the Complaint on October 5, 2009. (Doc. 38). On October 6, 2009, the case was referred to Magistrate Judge Martin C. Carlson. (Doc. 39). Defendant Smith filed an Answer on October 13, 2009. (Doc. 40).[1]

Following discovery and various motions, Defendant Smith filed a Motion for Summary Judgment (Doc. 78), a Brief in Support of the Motion (Doc. 79), an Appendix (Doc. 80), and a Statement of Facts on April 26, 2010. On April 27, 2010, Defendants Stanish and Bohinski filed a Motion for Summary Judgment (Doc. 82), a Statement of Facts (Doc. 83), and a Brief in Support of the Motion (Doc. 85). Plaintiff filed a Brief in Opposition to Defendant Smith's Motion for Summary Judgment (Doc. 90), a Statement of Facts related to

---

[1] Defendant Smith is an employee of the Pennsylvania Department of Corrections. Defendants Stanish and Bohinski are not employees of the Pennsylvania Department of Corrections and are therefore represented by separate counsel. (Doc. 105 at 3, n.2).

5

the Brief in Opposition (Doc. 91), and an Affidavit (Doc. 92) on May 12, 2010. On May 19, 2010, Plaintiff filed a Brief in Opposition to Defendants Stanish and Bohinski's Motion for Summary Judgment. (Doc. 93).

On June 11, 2010, Magistrate Judge Carlson issued a Report and Recommendation recommending that Defendants' Motions for Summary Judgment (Docs. 78, 82) be granted. (Doc. 99). Pursuant to Local Rule 72.3, Plaintiff was given fourteen days, after being served with a copy of the Report and Recommendation, to make any objections to the Magistrate Judge's proposed findings. On June 29, 2010, Plaintiff filed a Motion for an Extension of Time to Respond to the Report and Recommendation. (Doc. 100). We granted the Motion on June 30, 2010. Plaintiff filed his Objections to the Report and Recommendation on July 2, 2010. (Doc. 102). On July 15, 2010, Defendant Smith filed a Memorandum of Law in Opposition to Plaintiff's Objections (Doc. 105) and an Appendix in Support of the Memorandum (Doc. 106). On September 27, 2010, Defendants Stanish and Bohinski filed a Response to Plaintiff's Objections. (Doc. 111). Finally, Plaintiff filed a Response to both Docs. 105 and 111 on October 7, 2010. (Doc. 112).

## Discussion

Summary Judgment Standard

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the nonmoving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257; see Celotex Corp., 477 U.S. at 323–24. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251). Neither unsworn statements of counsel in memoranda submitted to the court nor unsupported conclusory allegations in the pleadings will dispute a material fact. See Fed. R. Civ. P. 56(e); Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990).

If the court determines that the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, then no genuine issue for trial exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

Objections to a Report and Recommendation

When objections are filed to a report and recommendation of a magistrate judge, we review de novo the portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C); see Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). Written objections to a report and recommendation must "specifically identify the portions of the proposed findings, recommendation or report to which objection is made and the basis for such objections." M.D. Pa. Local R. 72.3. We may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); M.D. Pa. Local R. 72.3. Although our review is de novo, we are permitted to rely upon the

magistrate judge's proposed recommendations to the extent that we, in the exercise of sound discretion, deem proper. See United States v. Raddatz, 447 U.S. 667, 676 (1980); see also Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

Deliberate Indifference Standard

In the medical context, an Eighth Amendment violation occurs only when government officials are deliberately indifferent to an inmate's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 105 (1976). Such deliberate indifference involves the "unnecessary and wanton infliction of pain." Id. at 104. To sustain an Eighth Amendment claims for deliberate indifference to a medical need, the plaintiff must establish that (1) the deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official must have a sufficiently culpable state of mind, i.e. a state of mind that is deliberately indifferent to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); see also Spruill v. Gillis, 372 F.3d 218, 237 (3d Cir. 2004). It is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also Estelle, 429 U.S. at 106.

Courts are reluctant to second-guess the propriety or adequacy of a particular course of medical treatment. See James v. Dep't of Corr., 230 F. App'x 195 (3d Cir. 2007).[2] Where there is a dispute or disagreement between an inmate and doctors over alternative treatment

---

[2] The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104(1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second guessing is not the province of the courts.
James, 230 F. App'x. at 197-98 (citations omitted); Doc. 99 at 15.

8

plans, the inmate's complaint will fail under an Eighth Amendment Constitutional claim since "the exercise by a doctor of his professional judgment is never deliberate indifference." See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990); see also Youngberg v. Romeo, 457 U.S. 307, 322 (1982); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997).

Analysis

Having reviewed the record of this case, we agree with the Magistrate Judge that Plaintiff has failed to meet the "legal and factual threshold necessary to sustain an Eighth Amendment claim of deliberate indifference to his serious medical needs." (Doc. 99 at 17). Plaintiff has received continuous care since injuring himself in a weightlifting accident. He has been examined by numerous medical professionals, received medications, MRI scans, consultations, physical therapy, and has even had surgery all in an effort to remedy his injury.

As to Defendant Smith, Plaintiff's argument that she was deliberately indifferent to his medical needs is unpersuasive. She was the first person to examine and provide treatment for Plaintiff's injury. According to Defendant Smith, she examined Plaintiff's area of discomfort, took his vital signs, including his blood pressure, heart rate, and respiration, gave Plaintiff 400 m.g. of Motrin, a non-prescription drug, for his discomfort and administered an ice pack with iodine. (Docs. 80 at 5; 99 at 19). All of these procedures were documented by Defendant Smith, and the documentation was provided to the court in Defendant's Appendix. (Doc. 80 at A-1 "Medical Incident/Injury Report"). Moreover, Defendant Smith indicated that she did not, as Plaintiff alleges, delay any treatment. She called Defendant Dr. Bohinski to advise him of Plaintiff's condition. (Doc. 80 at A-1). Defendant Dr. Bohinski then instructed Defendant Smith to place Plaintiff on overnight observation, and that he be given medication for his high blood pressure. (Doc. 80 at A-1). Based on these undisputed facts, Plaintiff fails to meet the legal and factual threshold for making out a valid Eighth Amendment claim against Defendant Smith. We find no evidence in the record to suggest that Defendant Smith

withheld treatment or was otherwise deliberately indifferent to Plaintiff's medical needs. Accordingly, we will adopt the Magistrate Judge's recommendation, and grant Defendant Smith's Motion for Summary Judgment. (Doc. 78).

With respect to Defendants Stanish and Bohinski, Plaintiff "in his pleadings seems to concede that he received on-going medical care from these doctors, a concession that defeats this Eighth Amendment claim." (Doc. 99 at 21). Plaintiff's contention is not that he was denied medical treatment, but rather that he is dissatisfied with the course and scope of the treatment he did receive. Particularly, Plaintiff is unhappy that following an unsuccessful first surgery, wherein doctors attempted to reattach muscle to muscle, it was decided that an alternative treatment of physical therapy would be more appropriate. (Doc. 85, App'x 10 at 3). Plaintiff, while unhappy with his course of treatment, was, nonetheless, treated for his injury. As stated, *supra*, where there is a dispute or disagreement between an inmate and doctors over alternative treatment plans, the inmate's complaint will fail under an Eighth Amendment Constitutional claim since "the exercise by a doctor of his professional judgment is never deliberate indifference." See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990); see also Youngberg v. Romeo, 457 U.S. 307, 322 (1982); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997). We find no evidence in the record to suggest that Defendant Stanish, nor Defendant Bohinski, withheld treatment or were otherwise deliberately indifferent to Plaintiff's medical needs. Accordingly, we will adopt the Magistrate Judge's recommendation, and we will grant Defendants' Motion for Summary Judgment. (Doc. 82).

## Conclusion

For the aforementioned reasons, Defendants' Motions for Summary Judgment (Docs. 78, 82) will be granted. We agree with the Magistrate Judge that Plaintiff has failed to establish the existence of a valid Eighth Amendment deliberate indifference claim.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DWIGHT WHETSTONE,

            Plaintiff

v.

STANLEY BOHINSKI, D.O., et al.,

            Defendants

Civil No. 3:08-CV-2306

(Judge Kosik)

**ORDER**

AND NOW, this 31st day of January, 2011, it is hereby ORDERED that:

(1) The June 11, 2010 Report and Recommendation of the Magistrate Judge (Doc. 99) is ADOPTED;

(2) Defendants' Motions for Summary Judgment (Docs. 78 & 82) are GRANTED;

(3) Judgment is hereby entered in FAVOR of Defendants and AGAINST Plaintiff;

(4) Plaintiff's Motion for Voluntary Physical Examination (Doc. 108) is DENIED as moot; and

(5) The Clerk of Court is directed to CLOSE this case, and FORWARD a copy of this Memorandum and Order to the Magistrate Judge.

                                                    Edwin M. Kosik
                                                    United States District Judge